492 P.2d 705

**Claudio A. VERDUGO, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Kennecott Copper Corporation, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 10588-PR.**

Supreme Court of Arizona,
In Banc.

Jan. 14, 1972.

Lawrence Ollason, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent.

Fennemore, Craig, von Ammon & Udall, by Michael Preston Green, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, Phoenix, by Dee-Dee Samet, Tucson, for respondent carrier.

CAMERON, Justice.

This is a petition to review a decision of the Court of Appeals affirming the awards of the Industrial Commission in Claim Numbers SY 767 and TG 875 (14 Ariz.App. 79, 480 P.2d 996 [1971], motion for rehearing denied at 15 Ariz.App. 155, 487 P.2d 1 [1971]).

We are called upon to determine:

1. whether petitioner sustained his burden in requesting a reopening of the 1963 claim (SY 767),
2. whether the "rubber stamp" award in the 1968 injury (TG 875) was a valid award and therefore res judicata, and
3. whether the Commission was without jurisdiction to reopen the 1968 award (TG 875).

The facts necessary for a determination of this matter are as follows. Petitioner was injured while working for the respondent Kennecott Copper Company on 11 December 1963. The injury was to the back, and resulted in an award granting medical benefits only (Claim No. SY 767). In 1965, the petitioner, while working for Kennecott, filed three reports concerning injury to his back. These were evidently considered minor and the files in these matters are not before the court. On 11 October 1968, the petitioner, while working for the same employer, reinjured his back and applied for compensation benefits (Claim No. TG 875). This matter was processed and on 6 February 1969, in both files, there is a note by M. A. Rutter, Self-Rater Department, which reads as follows:

"These two cases were discussed with the chief claims examiner inasmuch as the medical memo was not entirely clear as to what action should be taken relative to accepting or denying claim TG 875 and denying reopening on claim SY 767. After reviewing files it was our opinion that we should deny TG 875 and deny reopening of SY 767."

The next day, on 7 February 1969, the Commission, in the 1963 claim, entered its Findings and Award Denying Reopening of Claim. This award was properly signed by three Commissioners.

On the same day, 7 February 1969, the Commission in the 1968 claim, issued its Finding and Award for Non-Compensable Claim. This award was rubber-stamped by three Commissioners and the file is otherwise silent as to any official action by the Commission as to this claim. Both files reflect that on 17 February 1969 there is a telephone memo to the Commission from Frank Keith, of the Tucson Industrial Commission office, reading as follows:

"Claimant in Tucson with awards denying reopening and requesting explanation of same.

"Advised that cases were denied due to insignificant medical evidence to support claim that present condition is related to industrial injury and if claimant were to furnish medical evidence supporting same, consideration would be given to reopening."

The petitioner, with the help of an Industrial Commission representative, filed a Petition to Reopen in the 1963 claim. He did not file any new or additional matters in the 1968 claim, and that claim was not protested.

As the result of the petition to reopen, an operation was performed on 6 May 1969. The report of the attending physician states as follows:

"In surgery on 5/6/69 the patient was found to have a relatively new herniated nucleus pulposus on the right side at L5, S1. In my opinion this is less than one year old. The L4, 5 space was quite narrowed with an old degenerated and dried out nucleus. There was some posterior lipping at this level. It is my impression that at the time of surgery that this L4, 5 pathology "was·at least several years old. The findings at L4, S1; however, would be completely compatible with a herniation in October 1968, this being when he dates the onset of recurrent symptoms."

A hearing was held on·3 June·1969 at which time the petitioner appeared with-

out an attorney. The respondent, Kennecott Copper Company, appeared with an attorney, and no one appeared on behalf of the Fund.

Further hearings were held on 24 June 1969 at which time the Fund was represented by counsel as well as the respondent Kennecott Copper Company. Petitioner was still without counsel. Miss Samet for the Fund examined the petitioner concerning the request to reopen as follows:

"Q Mr. Verdugo, when you came to the Commission and you filed a petition for rehearing and protest, do you recall that?

"A Yes.

"Q I see. Did you feel that your pain was related to what you stated was an incident that happened on 10–11–68, a severe pain?

"A Yes, it was the same.

"Q Do you feel that you had sustained an injury on that date?

"A Yes.

"Q And when you came in to file this protest, petition for rehearing, were you objecting to the fact that the Commission found that you did not sustain an injury?

"A No. Just a moment. What I was doing, the pain was just as severe as I had it before. I wanted to reopen the case.

"Q Did you feel you sustained a new injury when you pulled the pipe and hurt your back?

"A No, at that time I don't think I did, no.

"Q (Mr. Schultz): You wanted to reopen the 1963 case? That's been my understanding all along?

"A Yes.

\*    \*    \*    \*    \*    \*

"Q (By Miss Samet): But they also denied your claim that you filed on the injury that you sustained in 1968, is that correct?

"A I think so, yes.

"Q Did you want to protest their denial?

"A I wanted to protest the denial in the case of '63 which I thought was the same injury because the pain was severe, the same.

"Q You did not want to protest the denial of the 1968 claim?

"A Well, I didn't know. I thought it was the same pain as 1963. I didn't know it was another disc."

After this hearing the petitioner was represented for the first time by an attorney other than the one who brought this writ of certiorari to the Court of Appeals. On 22 August 1969, the referee's report recommended that the petition to reopen the 1963 claim be denied and that the Commission was without jurisdiction as to the 1968 claim because of the failure of the petitioner to protest or petition for hearing or rehearing. On 26 November 1969, the Commission denied the petition to reopen the 1963 claim and stated as to the 1968 claim:

"IT IS FURTHER ORDERED that this Commission is without jurisdiction to further consider Claim Number TG 875."

To summarize, we are concerned with two claims. First, SY 767, the 1963 injury, in which the petition to reopen was filed when his back prevented him from working after the 1968 injury. Second, we have claim number TG 875, the 1968 injury, which unbeknownst to the petitioner was a new injury and not a reinjury of the old 1963 injury. This fact was not known to petitioner until after the operation on his back, said operation occurring after the time had expired in which to file a protest or petition for hearing in the 1968 claim. It is noted that the original 1963 injury was at L–4–5 while the operation revealed the new injury at L–5, S–1, which would make the confusion understandable. That the

petitioner was confused in this regard is admitted by the respondent, Kennecott Copper Company, as their brief states:

" * * * it is obvious from the record that the Petitioner intentionally chose not to protest the Commission's Award in TG 875 because he believed his back problems related to and were a continuation of his 1963 injury and were not caused by a new back injury. Such was understandable for in February, 1969, there was absolutely no evidence of or indication that Petitioner's back pain was caused by a new injury sustained in the October, 1968 episode. In fact, it was not until the hearing in June, 1969, when Dr. Baker testified, that the possibility that a new injury had been sustained by Petitioner in October, 1969, even came to light."

From these awards the petitioner brought a writ of certiorari to the Court of Appeals which affirmed the decision of the Industrial Commission. We granted the petition for review which was filed with this court.

### DENIAL OF THE PETITION TO REOPEN THE 1963 CLAIM

■ Based upon the evidence, the hearing officer correctly denied the petition to reopen the 1963 claim for the reason that petitioner had failed to carry his burden of proof connecting the disability to the 1963 injury.

### WAS THE AWARD OF THE COMMISSION INVALID BECAUSE IT WAS RUBBER-STAMPED?

The two Departments of Division One of the Court of Appeals have split on this issue. In Benites v. Industrial Commission, 10 Ariz.App. 459, 459 P.2d 738 (1969), Department A considered the question of the validity of an award of the Industrial Commission not bearing the actual handwritten signatures of the members. The court held that, "This is not an 'award' for the reason that it does not bear the

signatures of the Commissioners." Benites, supra, 10 Ariz.App. at 460, 459 P.2d at 739. The opinion of the Court of Appeals was vacated by this court, stating:

"The issue is not whether the names of the commissioners may be rubber-stamped on an award; it is who may make the decision which constitutes an award.

* * * * * *

"Nothing which we have written should be construed to mean that the Commissioners must personally sign an award. They may sign the document, put their signatures on it with a rubber stamp, or direct any employees to affix their signatures to it. It is the decision, not the signing, which is required." Benites, supra, 105 Ariz. 517 at 519, 520, 467 P.2d 911 at 913, 914 (1970).

In the case of Cauley v. Industrial Commission, 13 Ariz.App. 276, 475 P.2d 761 (1970), Department A was again faced with a rubber-stamped award. In that case Department A took the position that where a rubber-stamped award is present in the file, the file must also reflect that the award is in fact the result of Commission action. In other words, in the absence of some other evidence showing a rubber-stamped award to be an act of the Commission, the award is invalid. See also Land v. Industrial Commission, 15 Ariz.App. 117, 486 P.2d 229 (1971), by Department A.

Department B in the present case rejected this reasoning, stating:

"In Arizona, certain presumptions follow the official acts of her public officers. First is the presumption that public officers to whom a public duty has been delegated will perform that duty. Board of Supervisors v. Udall, 38 Ariz. 497, 1 P.2d 343 (1931); Donaldson v. Sisk, 57 Ariz. 318, 113 P.2d 860 (1941); Covington v. Basich Bros. Construction Co., 72 Ariz. 280, 233 P.2d 837 (1951). Second, where a public officer is required as a condition precedent to the performance

of an official act to do a certain thing, the presumption is that the officer has done the specific thing required. Consolidated Motors, Inc. v. Skousen, 56 Ariz. 481, 109 P.2d 41 (1941), certiorari denied, 314 U.S. 631, 62 S.Ct. 64, 86 L.Ed. 507 (1941).

"The same presumptions regarding public officials have been applied to the Industrial Commission. Industrial Commission of Arizona v. J. & J. Const. Co., 72 Ariz. 139, 231 P.2d 762 (1951).

"In the case *sub judice*, aside from the award, the file is silent one way or the other as to whether the rubber-stamped award was the act of the Commission. Applying the presumptions previously referred to, we can come to no other conclusion that in the absence of evidence to the contrary, when an award of the Commission appears in its official file, and bears the rubber-stamped names of the Commissioners, the Commission is presumed to have performed all necessary functions prerequisite to making the award, and the award therefore is valid." Verdugo v. Industrial Commission, 15 Ariz.App. 155, 487 P.2d 1, 2–3 (1971).

We are concerned herein with a problem of presumptions. The Court of Appeals, Department A, feels that in the absence of evidence to the contrary, the presumption should be that the Commission has not actually made an award which merely contains the rubber-stamped names of the Commissioners. The Court of Appeals, Department B, buttressed by the general rule that public officials are presumed to have done their duty, feels that the presumption should favor the Commission.

In establishing presumptions, courts and legislatures, according to Professor James, generally try to follow "convenience, fairness, and policy." James, Civil Procedure, § 7.9. An important element in determining which presumption is most convenient or fair, is. what James calls, at § 7.9, "[a]ccess to evidence", or, as he explains in § 7.8,

his section on burden of proof: "Another rule \* \* \* would put it on the party having the readier access to knowledge about the fact in question."

This court has adhered to the general rule of law that public officers are presumed to have done their duty, Hunt v. Campbell, 19 Ariz. 254, 169 P. 596 (1917); Industrial Commission of Arizona v. J. & J. Const. Co., 72 Ariz. 139, 231 P.2d 762 (1951), and that acts of public officials are presumed to be correct and legal in absence of clear and convincing evidence to the contrary, Burri v. Campbell, 102 Ariz. 541, 434 P.2d 627 (1967). We do not believe, however, these presumptions should apply to a case of this kind where the question is not whether the Commission acted properly in making an award or whether the Commission did its duty in considering the matter, but whether the Commission acted at all. In the case at bar, the evidence as to whether the Commission did consider and act is readily available to the Commission, while proof that they did not is practically impossible for the petitioner to show. We feel the presumption should be that the Commission did not act absent something in the file showing that the Commission did, in fact, consider the matter and act accordingly:

" \* \* \* It is well settled that in the interest of fairness the burden of proof ordinarily resting upon one party as to a disputed issue may shift to his adversary when the true facts relating to the disputed issue lie peculiarly within the knowledge of the latter. See, e. g., United States v. New York, N. H. & H. R. R. Co., 355 U.S. 253, 78 S.Ct. 212, 2 L.Ed.2d 247 (1957), wherein the Supreme Court stated, 'The ordinary rule, based on considerations of fairness, does not place the burden upon the litigant of establishing facts peculiarly within the knowledge of his adversary.' 355 U.S. 256 n. 5, 78 S.Ct. 214 n. 5." United States v. Hayes, 369 F.2d 671, 676 (9th Cir. 1966).

We therefore hold that the file being silent as to the action of the Commission in making the alleged award, the presumption was that the Commission did not make the award.

## JURISDICTION TO REOPEN THE 1968 CLAIM

Because we have held that the rubber-stamped award was in fact not an award, we do not consider petitioner's contention that the Commission was estopped from claiming that it was without jurisdiction to consider a protest or motion for rehearing in the 1968 claim. Neither do we consider whether this is analogous to fraud or mistake as set forth in § 12-543 A.R.S.

The decisions of the Court of Appeals at 14 Ariz.App. 79, 480 P.2d 996 (1971) and 15 Ariz.App. 155, 487 P.2d 1 (1971) are vacated. The decision of the Industrial Commission in Claim Number SY 767 is affirmed. As to Claim Number TG 875, there being no final award in said claim, the Industrial Commission and the parties are free to proceed in that matter.

HAYS, C. J., UDALL, V. C. J., STRUCKMEYER, and LOCKWOOD, JJ., concur.